## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 21-10232-DPW |
| ) | |
| ) | |
| BAHRAM GHARONY, ) | |
| ) | |
| Defendant. ) | |

### UNITED STATES' SENTENCING MEMORANDUM

The Government respectfully submits that this Court should sentence the defendant, BAHRAM GHARONY ("GHARONY"), to a term of incarceration at the low-end of the applicable U.S. Sentencing Guidelines range found by the Court, and in no event no more than 24 months. As further described below, the government contends the amount of loss is approximately $266,915, greater than $250,000, resulting in a total offense level of 16 and a Guideline Sentencing Range ("GSR") of 21-27. The defendant contends the amount of loss is slightly less, approximately $249,798.44, a difference of $17,117.24. Neither party is requesting an evidentiary hearing to resolve the discrepancy.

### FACTUAL OVERVIEW

A. <u>Overview of the Scheme</u>

From 2008 until September 2020, GHARONY was an auto-mechanic in the Fleet Management Division of the Boston Police Department ("BPD"). GHARONY specialized in foreign auto-parts (mostly Hondas and Toyotas) for the vehicles in BPD's fleet and had longstanding relationships with several local automotive dealers for auto parts. As part of his job with BPD, GHARONY contacted these local dealers for parts to maintain and repair BPD vehicles. The dealer would then ship the parts and the invoice to GHARONY, and GHARONY

1

would submit the invoice to accounts payable for payment. Upon receipt of the parts, GHARONY was responsible for the inventory of the parts.

GHARONY's scheme began in approximately June 2017. In addition to ordering parts for BPD vehicles, GHARONY also ordered parts for vehicles that were not in BPD's fleet, sold the parts through an informal network of auto-mechanics, and transferred the money from the sales into his bank account. At times, GHARONY altered invoices to conceal the scheme by whiting out the VIN's of the non-BPD vehicles on the invoices that he later submitted to BPD. Other times, when GHARONY purchased a tool from a company called "Arcand Tools," he directed the vendor to change the description on the invoice so it would appear as a parts purchase.

B. Calculation of Amount of Loss

The investigation involved a review and analysis of thousands of BPD invoices including a comparison of the actual invoices from the auto-part dealers and the invoices the defendant submitted to BPD for payment. BPD Anti-Corruption reviewed the invoices and entered the pertinent data (e.g., part numbers, descriptions, price, order date, shipping date, and invoice number) into a spreadsheet along with an indication on why, based on interviews and a review of records, the part purchase was fraudulent. The government provided this spreadsheet to the defendant and U.S. Probation along with each of the invoices that the defendant requested. The following is a summary of these categories for the government's loss amount:

The largest group of invoices, totaling $181,807.92 are for parts that GHARONY purchased for vehicles that were not in BPD's fleet. Within this category, GHARONY ordered a total of $53,320.27 in parts for vehicles that bore the VIN of a vehicle not in BPD's fleet. One example is alleged in Count One of the information. In that case, GHARONY ordered a "lower control arm" for a Honda from a local dealership, provided the dealership with a VIN not

associated with any BPD vehicle, but then submitted the dealership's invoice to BPD for payment with the VIN whited-out. Similarly, GHARONY ordered a total of $35,174.40 in parts for Acura's and $35,504.94 for parts for Civics that were not in BPD's Fleet.

In other instances, GHARONY purchased items from Arcand Tools that were falsely described as suspension parts but in fact were tools or other items. As further described below, BPD had a contract with Arcand to purchase suspension parts. To get around the fact that the purchase of the tools or other items was not authorized under the contract, GHARONY instructed an employee at Arcand to mislabel the purchase of tools and other items as suspension tools.

*Defendant's Objections*

The defendant objects to the government's loss amount and argues that the correct amount of loss is $249,798.44, a difference of $17,117.24. However, the individual items that GHARONY identifies in his objections and argues should not be attributed to loss, does not total $17,117.24. Instead, the total amount that GHARONY has identified in his objections adds up to only $15,421. Thus, even assuming that the defendant's arguments are correct, the total amount of loss is still $251,494, resulting in a base-offense-level of 19. *See* USSG § 2B1.1(b)(1)(G), PSR ¶ 30. The defendant's arguments are also incorrect.

*Tools from Arcand Tools*

First, the defendant alleges that he purchased a series of Milwaukee brand tools (totaling $5,685.86) from Arcand Tools with the permission of his supervisor and says they were used by BPD employees. The purchases were not authorized. According to Paul Needham,[1] the most recent Fleet Superintendent, BPD expected individual mechanics to purchase their own hand tools, such as Milwaukee impact wrenches, at their own expense. The City of Boston did not

---

[1] In the attached 302 report of Paul Needham, (Exhibit A) Superintendent Needham was shown each of these invoices and provided an explanation why each item was a fraudulent purchase.

purchase these items for the "stock room" as GHARONY falsely claimed on the invoices to Arcand. Moreover, even if the City did authorize the purchase of these tools, the authorization would have resulted in a requisition order and solicitation for at least three bids for the lowest responsible bidder because the contract with Arcand only authorized the purchase of suspension parts of BPD vehicles.

The defendant's dealings with Arcand Tools are also indicative of fraud. For example, according to an employee[2] at Arcand, Mr. Bill Head, GHARONY told Head that he was authorized by the "higher-ups" to pay the invoices to Arcand and was authorized to pay Arcand 15 percent more for each item. Furthermore, GHARONY instructed Head to alter the invoices to make it appear as if the purchase was for a suspension part rather than a tool. GHARONY told Head that the higher-ups needed tools and the only way BPD could source it was by altering the invoices.

*Software Updates*

Second, the defendant also contests two purchases of software updates from Arcand, one for $2,295.40 and another for $355.00. According to Needham, Ralph Rosati, a Senior Budget Analyst for BPD was supposed to pay this bill for proprietary software directly. *See* Exhibit A. Instead, GHARONY submitted an invoice, circumventing the process. Furthermore, while the defendant may be correct that the software items are in BPD's possession and should not be included in any court ordered restitution, for purposes of loss calculations under USSG § 2B1.1, "loss is the greater of actual loss or intended loss[]" which includes "intended pecuniary harm that would have been impossible or unlikely to occur." USSG § 2B1.1, comment. (n.3(A)(ii)). Here, by evading the proper channels to purchase these items, GHARONY sought to avoid detection

---

[2] See Exhibit B, interview of Bill Head of Arcand.

4

and acquire the items through fraud.

*Items Listed as Parts*

Third, the defendant contests items from Arcand that GHARONY falsely claimed in invoices to be auto-parts, but instead were non-auto part items, including a computer printer ink cartridge and a 32" flat screen television. While defendant claims the purchase of these items were "authorized," he has offered no corroborating evidence or any explanation why BPD would have authorized the purchase of a television set from Arcand Tools.

*Parts that Can Allegedly be Used in BPD Vehicles*

Fourth, the defendant also alleges that four items (3 tire pressure monitor sensors and 1 coil) totaling $4,187.84 are in fact compatible with BPD vehicles, and thus not fraudulent. The first tire pressure monitor (invoice # 160187) came from Arcand. According to Needham, however, since Arcand was under contract with BPD for suspension parts only, a separate requisition order and solicitation of bids would have been necessary. *See* Exhibit A. The next two tire pressure monitors came from Boch Honda but were tire pressure monitors for a Honda Acura. According to BPD, while they could be made compatible for the Honda's in the BPD fleet, an additional sensor was needed that GHARONY did not acquire. There is no explanation why the defendant acquired three tire pressure sensors that were at least more compatible with vehicles not in BPD's fleet.

*Purported Duplicates*

The last category of items that the defendant contests are purported duplicate entries. A closer look at the actual invoices, however, reveals that the invoices are in fact not duplicates and not double counted. Instead of buying one items, defendant frequently bought more than one. One example is below.

On March 27, 2020 (Order No. 713839), Boch Honda submitted an invoice (No. 662711)

for multiple items including a manifold, totaling $356.52.  In addition to the manifold ($241.50), the invoice included 3 separate $5.36 charges for a particular nut bearing parts number 42754-TY2-A81.  The listing was not a duplicate entry.  Instead, GHARONY purchased three nuts at a price of $5.36 each and the invoice included an itemized list of each part.

    C.  <u>Enhancement for Organized Scheme to Receive Stolen Vehicle Parts</u>

USSG § 2B1.1(b)(15) provides for a 2-level enhancement when the offense involves "an organized scheme to steal or to receive . . . vehicles or vehicle parts."  USSG § 2B1.1(b)(15).  The application note, however, states that the enhancement applies "in the case of an ongoing, sophisticated operation (e.g., an auto theft ring or "chop shop") to steal or to receive stolen . . . vehicles or vehicles parts."  USSG § 2B1.1(b)(15), application note. (12).  While plainly illegal and wrong, the defendant's scheme was clearly not a sophisticated chop shop or auto theft ring.  For this reason, the government does not object to U.S. Probation's removal of the 2-level enhancement.

    D.  <u>Advisory Sentencing Guideline Range</u>

The resulting offense level is level 19 with no enhancements.  After a 3-level reduction for acceptance of responsibility, the total offense level is 16, with an advisory GSR of between 21-27 months.  GHARONY has no prior criminal history.

**THE GOVERNMENT'S SENTENCING RECOMMENDATION**

Section 3553(a) of Title 18 specifies the factors courts are to consider in imposing a sentence and instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation.  18 U.S.C. § 3553(a).  Section 3553(a) then directs a sentencing court to take into account "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed" to serve the four

overarching aims of sentencing. §§ 3553(a)(1), (2)(A)–(D); *see Gall v. United States,* 552 U.S. 38, 50, n. 6 (2007). The court must also consider the pertinent guidelines and policies adopted by the Sentencing Commission. §§ 3553(a)(4), (5); see id., at 50, n. 6.

In analyzing the "nature and circumstances of the offense" in this case, the Court should consider the breadth and duration of the scheme. While each individual theft was usually in the hundreds of dollars, in the aggregate, GHARONY stole more than $250,000 from the City of Boston. The theft of $250,000 through a scheme to defraud also took a substantial and sustained effort. *See e.g., United States v. Brown,* 732 F.3d 781, 788 (7th Cir. 2013) (in analyzing the 3553(a) factors, the "three counts of conviction hardly captured the scope and duration of the scheme"). In total, investigators identified more than 2,000 fraudulent items over 3 years. To execute the scheme, GHARONY altered invoices, submitted fraudulent requests for payments, and took advantage of BPD's trust in GHARONY's role in maintaining its fleet of police cars.

The theft of $250,000 by a public employee in a fraudulent scheme warrants a sentence of incarceration. While the loss of his job is most likely sufficient to deter the defendant in this case, the Court should sentence the defendant to a term of incarceration to promote general deterrence. In Fiscal Year 2020, the median sentence for the crime of Fraud/Theft/Embezzlement was 10 months; the national median was 8 months.[3]

On the other hand, in crafting a sentence, the Court should also consider the fact that he accepted responsibility for his conduct quickly and, through counsel, came to an agreement to plead guilty to the instant offense. It should be noted that the defendant was persistent in his efforts to resolve this case. In weighing the "history and characteristics" of the defendant, the

---

[3] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2020/1c20.pdf

Court should also credit the arduous path that GHARONY took to get to the United States and his family circumstances. PSR ¶¶ 48-51.

Finally, following a sentence of incarceration, the Court should impose a period of supervised release of at least one year, and pursuant to 18 U.S.C. § 3663A, order restitution in the amount of $256,432.

## CONCLUSION

For the foregoing reasons, the Government submits that the Court should sentence the defendant, BAHRAM GHARONY, to a term of incarceration at the low-end of the applicable U.S. Sentencing Guidelines range found by the Court, but in no event more than 24 months.

Respectfully submitted,

NATHANIEL R. MENDELL
Acting United States Attorney

By:   /s/ *Neil Gallagher*
     Neil J. Gallagher, Jr.
     Assistant U.S. Attorney

Date Submitted: December 7, 2021

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        /s/ *Neil J. Gallagher, Jr.*
        Neil J. Gallagher, Jr.