United States District Court
District of Massachusetts

| | |
|---|---|
| United States | ) |
| | ) |
| v. | )   Docket: 1:21CR10232-1-DPW |
| | ) |
| Bahram Gharony, | ) |
|     Defendant | ) |

**Defendant Bahram Gharony's Sentencing Memorandum**

Mr. Gharony has a lot of people who depend on him. He has two families, one from a prior relationship and one with his wife, and he has four children, two of whom are severely disabled. He takes his children to sporting events, physical therapy appointments and watches them during the day when he is not working. He is employed as a tow-truck driver, picking up double-shifts and over-nights when possible. He has no criminal record. He is asking this Court to impose a sentence of three years of probation. This sentence will allow him to work while under strict supervision, to pay restitution and to provide for his family.

**Procedural Background**

On August 10, 2021, Bahram Gharony made his initial appearance in U.S. District Court and was released on personal recognize. On that same date, Mr. Gharony pled guilty to a two-count Information before Judge Woodlock. The Information charged two counts of Wire Fraud in violation of 18 USC § 1343. Mr. Gharony's plea was accepted and his sentencing was scheduled for December 14, 2021.

**Guideline Sentencing Range**

1

Mr. Gharony asserts that his guideline sentencing range is 16 based on a loss amount of $266,915. After review, he does not dispute the Government's calculations as to this amount. The following calculation applies:

- Pursuant to § 2B1.1(a)(1), the base offense level is 7;
- Pursuant to § 2B1.1(b)(1)(G), because the loss amount is more than $250,000 but less than $550,000 increase by 12;
- Pursuant to § 3E1.1(a), Defendant's offense level is decreased by 2 because he has accepted responsibility for his crimes.
- Pursuant to § 3E1.1(b), Defendant's offense level is decreased by 1 because he promptly notified the government of his intention to enter a guilty plea.

Based on a criminal history category of I, this produces an advisory sentencing range of 21-27 months.

## Mr. Gharony's History and Characteristics

Extreme financial pressure, the responsibility to support two families, (one from a prior relationship and another with his present spouse), the need to provide for four children, two of whom were severely disabled, -- all of these things weighed on Mr. Gharony and clouded his judgment. Additionally, he was hampered by Post-Traumatic Stress Disorder (PTSD) owing to a prior trauma and from Attention Deficit Hyperactivity Disorder (ADHD) which made it difficult to focus, caused impulsivity and led to bouts of depression. This does not excuse his conduct. Mr. Gharony must make amends for his crimes. He seeks the opportunity to do so while continuing to work so as to uphold his familial responsibilities.

The financial pressures and responsibilities that Mr. Gharony faced do not justify his conduct. They merely help to explain how a hard-working person would lose his good judgement. In 2010, Mr. Gharony found a partner in Siveth So. Ms. So had a son from a prior relationship, Shane Tran, who was then 5-years-old. In 2012, Mr. Gharony and Ms. So had a

son, Saman Gharony. Saman was born with Erb's Palsy and had only 60% usage of his left arm due to nerve damage sustained during birth. Mr. Gharony and Ms. So eventually separated and Mr. Gharony married Axia Colon in 2014. When they married, Ms. Colon had a 4-year-old daughter from a prior relationship named Ixaly Rivera. Ixaly suffered from cerebral palsy and epilepsy, was non-verbal, confined to a wheel chair and required full-time care. Mr. Gharony and Ms. Colon separated a few years later and during this time Ms. Colon had a second child, Joelixa Rivera in 2017. Mr. Gharony and Ms. Colon reunited in 2018. Throughout this time, Mr. Gharony maintained both families, was on the Parent's Teachers Association at Ms. So's older son's (Shane Tran's) school (Boston Latin Academy), he took his son Saman and his daughter Ixaly to doctor's appointments, and he covered all of his children's various needs. Additionally, Mr. Gharony paid his parent's cell phone and cable bills, bills which were in fact under his name.

     Meanwhile, Mr. Gharony's financial pressures mounted. Mr. Gharony had purchased a house with a friend in 2016 with plans to live in one side of it while renting out the other. After purchasing the home, however, the tenant was unable to pay the rent and the friend with whom he had bought the house was not able to pay his share of the mortgage. Mr. Gharony was responsible for the entire mortgage. The house was ultimately foreclosed and in late 2018, Mr. Gharony moved into his wife's apartment in Lowell.

     Upon moving to Lowell, Mr. Gharony paid rent and purchased furniture. The family lived in a one-floor apartment in a housing complex. Whole-sale food boxes lined the cement walls. A cracked sidewalk led to the walkway where their daughter, Ixaly, accessed the wheel chair ramp and was helped into the family's mid-sized SUV. Living in Lowell added to Mr. Gharony's commute and impeded his ability to obtain a second job, something he had previously

relied on.  His wife could not work because she had to care for Ixaly.  Then, in 2019, Ms. Colon gave birth to their daughter, Sanay Gharony.  Mr. Gharony made the car payments, bought household items, and he supported his son's mother, Siveth So, who lived with their son Saman in Brockton.  Mr. Gharony's crimes spanned this time period, from 2017-2020.

      Internal factors also afflicted him.  Mr. Gharony's brain disorder impaired his judgement and his decision-making.  Mr. Gharony was diagnosed with Attention Deficit Hyperactive Disorder (ADHD) when he was 13, a disease which when seriously indicated can diminish a person's ability to plan, to exercise good judgment, and to postpone action.  The American Psychiatric Association states that while symptoms of motoric hyperactivity tend to decrease in adolescence and adulthood, "symptoms of restlessness, inattention, poor planning and impulsivity persist."[1]  ADHD interfered with Mr. Gharony's functioning; as a child he was unable to sit still or refrain from talking in order to focus on schoolwork.  In Boston, some years ago, Mr. Gharony enrolled at Bunker Hill Community College but was not able to concentrate on his studies and had to drop out.  The infliction of Post-Traumatic Stress Disorder (PTSD) resulting from an early trauma also undermined his mental health.  PSR ¶ 48.  It is worth noting that trauma and PTSD can exacerbate ADHD symptomatology; that is, the symptoms afflicting Mr. Gharony, e.g. impulsivity, distractibility, anxiety, and depression are typical of PTSD as well as ADHD.[2]

      The extent to which Mr. Gharony apparently strayed from his former self as a thoughtful and hard-working person speaks to the pressure that he was under and the way in which he perceived that pressure, a perception which he now knows was wrong.  Over the years Mr.

---

[1] Private evaluation by Frances Lang, LICSW, 85 Kenwood Street, Brookline, MA 02446 (Ms. Lang is a private clinician who practices in Brookline and evaluated Mr. Gharony at the request of his counsel; she cited to the Diagnostic and Statistical Manual of Mental Disorders – 5).
[2] *Id.*

Gharony volunteered at Madison Park High School teaching vocational skills, picked up overtime shifts and worked second jobs, cared for his elderly parents and uncles, and is roundly described as someone who dropped everything and drove hours to pick up a stranded friend or fix a loved-one's car.  (*See, e.g.*, Letter from Elvin Bock; Letter from Christian Tschibelu; Letter from Akash Lalla).  Mr. Gharony's friends described him as energetic and thoughtful with a near-photographic memory.  (See Letter from Akash Lalla).

Mr. Gharony's son's mother, Siveth So, also described Mr. Gharony's generous character.  She wrote that their son, Saman, was

> born with no movement to his left arm and his right arm fractured at the time of birth.  Saman was admitted into the Neonatal Intensive Care Unit for 10 days and Bahram never left Saman's sight....  He is a caring father and I don't know any other father like him.  I wasn't able to attend to Saman right away because of the delivery complications, it took a toll on my body.  I had lost an enormous amount of blood so I was bed ridden for 4 days.  Bahram helped me to overcome this tragedy by being a supportive partner and father.  Saman's condition had both parents occupied through the monthly doctor's visits, physical therapies, occupational therapies, early intervention, orthopedics visits and the constant visitation at home.  Bahram helped me in taking care of Saman.

Mr. Gharony, by all accounts, was a caring and thoughtful person.  He recognizes how wrong it was to allow external stressors to overwhelm him and to commit these shameful crimes.  This is especially true where he had previously worked so hard for what he earned.  One particularly sad aspect of these events is that Mr. Gharony was indeed a highly skilled auto-mechanic.

Mr. Gharony is remorseful for his crimes.  He is eager to work hard, pay restitution and keep his families afloat.  The poverty guideline for 2021 was set at $35,580 for a family of six.[3]  Mr. Gharony, whose income varies with commission, earns roughly $40,000 per year.  PSR ¶

---

[3] 2021 Poverty Guidelines, OFF. OF THE ASSISTANT SEC. FOR PLANNING AND EVALUATION, available online at https://aspe.hhs.gov/topics/poverty-economic-mobility/poverty-guidelines/prior-hhs-poverty-guidelines-federal-register-references/2021-poverty-guidelines.

67-68. Siveth So explained the extent to which Mr. Gharony is needed, and she is worth quoting here:

> His absence would affect Saman the most. Saman has gone through so much as a young child, if his father is not around I don't think he is able to handle that. Saman's condition is known to affect his thinking abilities…. If his father is not around to help him, he will lose his motivation to get better. His arm has limitations and Saman usually does his physical therapies with Bahram. He would play basketball and other activities. If his father is not around he will be less consistent and this will cause more harm to Saman's abilities.
>
> We rely on Bahram for financial support. Even though we are separated Bahram helped me financially by giving me $400 a month as well as money if Saman needs any additional funds. Bahram is there to help like having birthday parties or if Saman wants to participate in a sport. I won't be able to afford my daily expenses if Bahram is not around. I have to work two jobs and I'm still barely managing to get by. If Bahram is not there to help me and my children I know for a fact that we would be homeless. My gross income helps me with my daily expenses but without Bahram's help I would be in a bind.
>
> In addition to money, Bahram helps me with daily tasks. Bahram helps me in raising my child Saman, since I work a full-time job and a part time job. I need help with daycare services and since I can't afford daycare services Bahram is there to help if I need to work and Bahram is not working. Bahram helps me with bringing Saman to his doctor's appointments. I don't have any family members who are able to help me…. He helps with his physical therapies and anything else whether it's helping out with his homework or massaging his arm. If Bahram is incarcerated our family would not be the same.

Despite the steep road ahead, Mr. Gharony is now poised to achieve a level of success as a tow-truck driver. His employer at KLM Towing called him "one of the best employees he has ever had," someone who works on his days off and on holidays. PSR ¶ 60. Mr. Gharony stated that he is positioned to become a partner at the towing company. Mr. Gharony has also sought psychotherapy to deal with the feelings of mistrust and anger that his childhood traumas engendered and continue to evoke in him. He is presently in treatment with Dr. Babadi of Harvard University. Dr. Babadi is of Iranian-heritage, a fact which Mr. Gharony feels will enhance the therapist's ability to understand him. Mr. Gharony is also prescribed Adderall to

aide his mental health. Mr. Gharony asks that this Court sentence him to probation. He is ready to make right on his misdeeds. He hopes that he can do so while continuing to work.

## Argument

**I.  Mr. Gharony should be sentenced to probation, below the 21-27-month Guideline.**

The Court should sentence Mr. Gharony to term of three years of probation. This would be a departure from the appropriate Guideline Range, which is 21-27 months, based on a Total Offense Level of 16 and a CHC of I.

### a) The "sophisticated operation" enhancement does not apply.

Mr. Gharony agrees that the "sophisticated operation" enhancement at U.S.S.G. § 2B1.1(b)(15) does not apply. Application Note 12 to U.S.S.G. 2B1.1 provides that, "Subsection (b)(15) provides a minimum offense level in the case of an ongoing, sophisticated operation (e.g., an auto theft ring or 'chop shop') to steal or to receive stolen…vehicles or vehicle parts." The enhancement at § 2B1.1(b)(15) is not meant to apply across the board in all cases involving auto-parts. Nor was Mr. Gharony's theft sophisticated within the meaning of Subsection (b)(15). It consisted of ordering car parts on a City account and then selling them. The most elaborate means he used to hide a purchase was to white-out a single line on a receipt or to change one word on an order form. Clearly this was not a: "sophisticated operation (e.g., an auto theft ring or 'chop shop')." U.S.S.G. 2B1.1, Application Note 12; *see also Sordillo*, supra, at 33-34 (applying literal interpretation of enhancement language: "[this section] provides an alternative minimum measure of loss in the case of an ongoing, sophisticated operation such as an auto theft ring or 'chop shop.' Because Sordillo was convicted of operating a 'chop shop,' a base offense level of 14 was proper."). Contrast United States v. Fofanah, 765 F.3d 141, 146 (2014) (sophisticated means sentencing increase was warranted for defendant convicted of conspiracy to

transport stolen vehicles, i.e., an auto-theft ring; defendant used fraudulent car titles, shipped the cars overseas to Guinea, obtained fraudulent dock receipts, recommended the practice of disabling car security systems, selected among East African countries based on shipping and title requirements).

      **b) A sentence of probation would have an "adequate" deterrent effect on the general public.**

A sentence of probation would have an "adequate" deterrent effect on the general public. *See* 18 U.S.C. §3553. Research consistently indicates that although the certainty of being caught and punished does have a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and functions of sentencing*, 34 CRIME & JUST. 1, 28 (2006). "Three national academy of science panels...reached that conclusion, as has every major survey of the evidence." *Id.*; *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 CARDOZO J. CONFLICT RESOL. 481, 447-448 (2007) ("[c]ertainty of punishment is empirically known to be a far better deterrent than its severity"); Steven N. Durlauf & Daniel s. Nagin, *Imprisonment and Crime: Can Both be Reduced?*, 10 CRIMINOLOGY & PUB. POL'Y, 37 (2011)[4] ("The key empirical conclusions of our literature review are that at prevailing levels of certainty and severity, relatively little reliable evidence of variation in the severity of punishment having a substantial deterrent effect is available and that relatively strong evidence indicates that variation in the certainty of punishment has a large deterrent effect"); Raymond Pasternoster, *How Much do we Really Know About Criminal Deterrence*, 100 J. CRIM. L. & CRIMINOLOGY 765, 818 (2010) (there is "no real evidence of a deterrent effect for severity...[i]n virtually every

---

[4] Available at http://onlinelibrary.wiley.com/doi/10.1111/j.1745-9133.2010.00680.x/pdf.

deterrence study to date, the perceived certainty of punishment was more important than the perceived severity.").

In this case, a probationary sentence is sufficient to achieve general deterrence as provided in §3553. Such a sentence is severe enough to send a message to the public that wire fraud will not be tolerated. Increasing Mr. Gharony's sentence beyond this will not result in a corresponding increase in general deterrence.

### c) With proper supervision, Mr. Gharony's risk of re-offense is minimal, thus a probation sentence is sufficient to serve as a specific deterrent.

The Government agrees that removing Mr. Gharony from his job is likely to deter Mr. Gharony from any re-offense. *See* Government's Sentencing Memorandum at p. 7. A probationary sentence, with proper supervision, would indeed be sufficient to deter Mr. Gharony and allow him to continue to work to support his family. As stated in his "Short and Long-term Goals," losing his present position with his tow company will undercut his ability to become a partner in this business and this could actually increase his risk of re-offense further because of the severe economic pressure he would be under upon release and the difficulty he will face in regaining meaningful employment. *See* Defendant's Appendix to Sentencing Memorandum. Moreover, this would make it difficult for him to pay restitution.

### d) The proposed sentence is more than adequate to provide Mr. Gharony with vocational and educational training, medical care and correctional treatment.

The proposed sentence is more than sufficient to provide Mr. Gharony with needed educational and/or vocational training, medical care, or other correctional treatment in the most effective manner. Mr. Gharony has worked his entire adult life, does not suffer from mental illness, presently undergoes psychotherapy, and is prescribed medication. He has insight into his

offense and would be under strict supervision while on probation. These statutory sentencing goals can thus be accomplished without being incarcerated.

## Conclusion

Mr. Gharony respectfully requests a sentence that will allow him to continue with the new life he has made for himself working as a tow-truck driver, and which would allow him to continue to support his families. He asks the Court for a sentence of three years of probation, which is "sufficient, but not greater than necessary" to comply with 18 U.S.C. §3353(a)(2), and pursuant to 18 U.S.C. § 3663A, to order restitution in the amount of $256,432.

Dated: 12/7/21

Respectfully submitted
BAHRAM GHARONY
By Counsel:
*/s/Zachary Lown*
Zachary Lown | BBO No. 687838
Lown Law Firm | 50 Congress Street, Suite 600
Boston, MA 02109
t 617.676.7339 | f 617.870.0500
zacharylown@lownlawfirm.com

## CERTIFICATE OF SERVICE

Counsel certifies that he has caused a true copy of this document to be served upon counsel of record to all the parties through the CM/ECF system of this District as set forth in the Notice of Electronic Filing and that no party requires service by other means.

Dated: 12/7/21

s/*Zachary Lown*